Justice ALBIN,
dissenting.
In criminal cases, the State routinely retains scientists and analysts to perform tests on a suspect’s blood to detect the presence of drugs or alcohol. Today, the majority pronounces that the accused has no constitutional right to confront the scientist or analyst who actually performs the test. The majority upholds a criminal conviction based on the expert testimony of a laboratory “supervisor,” who did not perform, participate in, or observe the analysis of defendant’s blood test. Indeed, this “supervisor” was used as a conduit to pass through to the jury the *50 testimonial statements of the real test analysts who were never subject to cross-examination.
The Sixth Amendment’s Confrontation Clause generally bars the admission of an absent witness’s out-of-court testimonial hearsay as a substitute for live in-court testimony when the accused has not had the opportunity to cross-examine the absent witness. Crawford v. Washington, 541 U.S. 36, 50-62,124 S.Ct. 1354, 1363-71, 158 L.Ed.2d 177, 192-99 (2004). The majority’s opinion cannot be squared with that principle. More ominously, the opinion is in direct conflict with Bullcoming v. New Mexico, 564 U.S. -, -, 131 S.Ct. 2705, 2713, 180 L.Ed.2d 610, 619 (2011), a case in which the United States Supreme Court held that the State violated the Sixth Amendment’s Confrontation Clause by calling a non-testing analyst as a substitute witness for the analyst who performed a blood analysis. However confused the United States Supreme Court’s Confrontation Clause jurisprudence may be in the wake of Williams v. Illinois, 567 U.S. -, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012) — with its plurality, concurring, and dissenting opinions — it is doubtful that any member of the Williams Court would adopt the approach the majority is taking here.
The purpose of the Confrontation Clause is not to foster expedient trial procedures, but to ensure that testimonial evidence is tested in the crucible of cross-examination — however time consuming or difficult that process may be. See Crawford, supra, 541 U.S. at 61, 124 S.Ct. at 1370, 158 L.Ed.2d at 199. Thus, chemical analysts who provide out-of-court “testimony” through laboratory reports must be made available for cross-examination. Bullcoming, supra, 564 U.S. at -, 131 S.Ct. at 2716, 180 L.Ed.2d at 622.
Curtailing confrontation rights is not the answer to the uncertainty in federal jurisprudence. Although the majority upholds the conviction in this case, it is chancing the reversal of countless future convictions by rendering an opinion that may fall below the minimum guarantees of the Sixth Amendment. The majority may be charting a course that will collide with the next United States Supreme Court case construing the Confrontation Clause. Law *51 enforcement, if properly directed, can successfully prosecute cases while conforming to the dictates of the Confrontation Clause. It has done so in the past.
Whatever perceived benefits are achieved by the majority opinion, they come at a high price — the abandonment of basic principles that underlie our Confrontation Clause jurisprudence. I therefore respectfully dissent.
I.
A.
The majority opinion cannot be reconciled with the United States Supreme Court’s recent Confrontation Clause jurisprudence. One overarching principle remains clear from that jurisprudence: the admission of testimonial statements from witnesses absent from trial violates the Sixth Amendment’s Confrontation Clause unless the witnesses are “unavailable,” and “the defendant has had a prior opportunity to cross-examine” them. Crawford, supra, 541 U.S. at 59, 124 S.Ct. at 1369, 158 L.Ed.2d at 197. A statement is “testimonial” if the primary purpose of making the statement is to establish a fact as evidence in a later criminal prosecution. Bullcoming, supra, 564 U.S. at - n. 6, 131 S.Ct. at 2714 n. 6, 180 L.Ed.2d at 620 n. 6 (quoting Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224, 237 (2006)).
Applying that test in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314, 321 (2009), the Court held that a laboratory report identifying a substance as cocaine was testimonial evidence and therefore its admission at trial, without the testimony of the analyst who prepared it, violated the Sixth Amendment’s Confrontation Clause. The report in Melendez-Diaz was created for the specific purpose of serving “as evidence in a criminal proceeding.” Bullcoming, supra, 564 U.S. at -, 131 S.Ct. at 2709, 180 L.Ed.2d at 615.
*52 Bullcoming presented a variation of the theme in Melendez-Diaz. In Bullcoming, the Court held that the in-court testimony of a scientist who did not conduct or participate in any laboratory tests relevant to the case, but who read into evidence the actual analyst’s test results contained in a certified report, violated the Confrontation Clause. Id. at -, 131 S.Ct. at 2713, 180 L.Ed.2d at 619. The facts in Bullcoming are remarkably similar to the facts in the present case.
In Bullcoming, the defendant was arrested for driving while intoxicated (DWI). Id. at -, 131 S.Ct. at 2710, 180 L.Ed.2d at 616. A blood sample was taken from him at a hospital and submitted for testing at a state laboratory. Ibid. A forensic analyst operated a gas chromatograph machine to test Bullcoming’s blood sample and determined his blood alcohol content (BAC). Id. at -, 131 S.Ct. at 2711, 180 L.Ed.2d at 617. The Supreme Court made the following observations about the operation of the gas chromatograph machine: “ ‘[T]he analyst must be aware of, and adhere to, good analytical practices and understand what is being done and why.’ ” Id. at -n. 1, 131 S.Ct. at 2711 n. 1, 180 L.Ed.2d at 617 n. 1 (quoting David T. Stafford, Chromatography, in Principles of Forensic Toxicology 92, 114 (B. Levine ed., 2d ed.2006)). Although the gas chromatograph machine produces a printed graph, securing “an accurate BAC measurement ... is not so simple or certain.” Ibid. Indeed, the “risk of human error [is not] so remote as to be negligible.” Ibid.
The forensic analyst determined that Bullcoming’s BAC was 0.21, a level sufficient to support a conviction for aggravated DWI. Id. at -, 131 S.Ct. at 2711, 180 L.Ed.2d at 617-18. The analyst was not called as a witness at Bullcoming’s trial. Id. at -, 131 S.Ct. at 2711-12, 180 L.Ed.2d at 618. Instead, the State called Gerasimos Razatos, a scientist also qualified as an expert in the gas chromatograph machine but who did not participate in testing Bullcoming’s blood. Id. at -, 131 S.Ct. at 2712, 180 L.Ed.2d at 618. Razatos gave “live, in-court testimony” about laboratory procedures, the machine’s operation, and the results of the BAC *53 test. Id. at -, 131 S.Ct. at 2713, 180 L.Ed.2d at 619. In addition, the analyst’s report was admitted as a business record. Id. at -, 131 S.Ct. at 2712, 180 L.Ed.2d at 618.
The United States Supreme Court held that Razatos’s surrogate testimony violated the Confrontation Clause because Bullcoming did not have the opportunity to cross-examine the forensic analyst who tested his blood. Id. at -, 131 S.Ct. at 2713, 180 L.Ed.2d at 619. According to the Court, the surrogate expert’s testimony “could not convey what [the forensic analyst] knew or observed about the events his [laboratory report] concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst’s part.” Id. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 622. Indeed, at trial, Razatos admitted that “ ‘you don’t know unless you actually observe the analysis that someone else conducts, whether they followed th[e] protocol in every instance.’” Id. at - n. 8, 131 S.Ct. at 2715 n. 8, 180 L.Ed.2d at 622 n. 8 (alteration in original). Razatos, moreover, was unable to testify why the forensic analyst was on unpaid leave. Id. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 622. Thus, the defense could not ask “questions designed to reveal whether incompetence, evasiveness, or dishonesty accounted for [the forensic analyst’s] removal from his work station.” Ibid.
The Supreme Court reached conclusions relevant to the facts before us. First, “the comparative reliability of an analyst’s testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar.” Id. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 621. Second, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess “ ‘the scientific acumen of Mme. Curie and the veracity of Mother Teresa.’ ” Ibid, (quoting Melendez-Diaz, supra, 557 U.S. at 319 n. 6, 129 S.Ct. at 2537 n. 6, 174 L.Ed.2d at 327 n. 6).
In her concurring opinion, Justice Sotomayor noted that Bull-coming would have been “a different case if, for example, a *54 supervisor who observed an analyst conducting a test testified about the results or a report about such results.” Id. at -, 131 S.Ct. at 2722, 180 L.Ed.2d at 629. Razatos did not observe the testing of the forensic analyst. Ibid.
B.
The facts before us are remarkably similar to those in Bullcoming, and yet the majority reaches a diametrically different result.
Here, defendant Julie Michaels was charged with vehicular homicide, assault by auto, and related offenses stemming from a head-on car collision. The State claimed that defendant was under the influence of drugs at the time of the accident. At the direction of a police officer, a sample of defendant’s blood was taken at the hospital where she was treated. The Sussex County Prosecutor’s Office forwarded the blood sample to NMS Labs in furtherance of its criminal investigation. NMS Labs submitted back a report entitled “STATE V. JULIE MICHAELS” authored by forensic toxicologist Edward J. Barbieri, Ph.D.
The report revealed that defendant had concentrations of cocaine and Xanax in her blood. According to Dr. Barbieri, defendant’s “alertness, judgment, perception, coordination, response time and sense of care and caution were impaired rendering this individual unfit to operate a motor vehicle safely.” The report failed to reveal that Dr. Barbieri did not conduct, participate in, or observe any of the blood tests that detected the drugs in defendant’s system. Dr. Barbieri’s report, which was admitted into evidence, does not name the analysts who conducted the test, although the discovery, which is referenced by the majority and is not part of the record, suggests that only two analysts were involved in the actual testing. Other laboratory employees referred to by the majority appear to be merely in the chain of custody.
Like in Bullcoming, the analysts here used a gas chromatograph machine to test defendant’s blood sample. Like Razatos in Bullcoming, Dr. Barbieri conceded that “there’s always a human *55 element” involved when a gas chromatograph machine is operated. Like Razatos in Bullcoming, Dr. Barbieri averred to the procedures that NMS technicians follow when testing samples. Like Razatos in Bullcoming, Dr. Barbieri took the test results of the analysts and merely parroted them before the jury. Like Razatos in Bullcoming, Dr. Barbieri could not testify about what the forensic analysts “knew or observed” when they performed the “particular test and testing process,” nor was he in a position to “expose any lapses” on the part of the analysts. See id. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 622. Moreover, Dr. Barbieri does not fit within the example given by Justice Sotomayor in her concurrence of a supervisor who observed the testing performed by an analyst.
In sum, Dr. Barbieri, in his surrogate testimony, passed through the testimonial statements of the analysts who actually performed the tests on defendant’s blood, denying defendant her right of confrontation. This is exactly what Bullcoming says the Sixth Amendment prohibits. There are no meaningful differences between the case before us and Bullcoming, except the outcomes.
II.
The majority contends that, even though Dr. Barbieri conducted none of the blood tests involved in this case, his testimony is constitutionally admissible expert testimony under N.J.R.E. 703. The majority concedes that the analysts’ “facts” — the tests they performed on defendant’s blood sample and the results they recorded — are testimonial statements. That Dr. Barbieri relied on facts or data from the analysts in forming his own opinion does not diminish the impermissible use of the analysts’ testimonial statements, which were presented to the jury. Those absent analysts’ tests, moreover, were offered for their truth — offered to prove that the substances in defendant’s blood were cocaine and Xanax. Those tests were not foundational, not calibrations of a machine, but were the very tests that went to the heart of whether defendant was guilty of the crimes charged. The majority allows *56 the absent analysts’ testimonial statements to be passed through Dr. Barbieri to the jury without cross-examination of the analysts.
The position taken by the majority has not only been rejected in Bullcoming but also does not find support in either the plurality opinion or dissenting opinion in Williams v. Illinois. In Williams, supra, the Court divided over the question of whether a DNA profile, prepared by a specialist who did not testily, was offered for the truth of its contents. 567 U.S. at -, -, 132 S.Ct. at 2228, 2236, 183 L.Ed.2d at 99, 108 (plurality opinion). Here, the majority asserts that it is not relying on Williams. The majority, moreover, does not contest that the analysts’ tests results were offered for their truth or that the results were testimonial in nature. No justice in Williams suggested that passing testimonial statements offered for their truth through a surrogate witness would be acceptable under the Confrontation Clause.
It may be true that Dr. Barbieri gave an independent opinion. But that opinion was formed by the testimonial statements of the analysts who performed the tests. The State cannot deprive the accused of the right to confront the analysts by the use of a surrogate witness. The core purpose of the Confrontation Clause is undermined when the accused cannot confront those whose statements bear testimony against her.
The majority opinion will have far-reaching effects for future eases involving laboratory tests that are critical to criminal prosecutions. From this point forward, a laboratory — regardless of how many scientists are employed there — can designate one forensic expert to testily at all trials, relying on the tests of fellow scientists in which he has had no involvement. The incentive will be to select as the expert witness the best pitch person, the one who appears to have walked out of Central Casting. This approach will destroy the ability of the accused to have any meaningful opportunity to cross-examine the persons who are actually bearing testimony against her — the actual chemists or analysts conducting the tests.
*57 III.
The majority acknowledges that courts throughout the country are reading Williams and reaching divergent results. We know that Williams is not the last word. If the United States Supreme Court does not follow the path taken by the majority today, and if prosecutors take the approach that providing fewer confrontation opportunities is the better strategy, then countless convictions may be jeopardized.
Prudence would dictate that when federal jurisprudence is in a state of flux, a conservative approach is best. See State v. O’Neill, 193 N.J. 148, 175, 936 A.2d 438 (2007) (affording protections to accused under state law when “[t]he shifting sands of federal jurisprudence provide no certainty concerning the standard that might apply to the next set of slightly different facts”). Cautious prosecutors can still place on the stand the chemist or analyst who actually conducted the test and will not have to worry about a United States Supreme Court decision upending a conviction.
IV.
In the wake of the majority’s opinion, defendants will no longer have the opportunity to cross-examine the analysts who actually perform scientific tests — no longer have the opportunity to expose errors, lapses, and shortcomings in the testing process. This is a backward step that, I believe, violates the Sixth Amendment.
For the reasons expressed, I respectfully dissent.
For affirmance — Chief Justice RABNER and Justices LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned) — 6.
For reversal — Justice ALBIN — -1.